# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JEFFREY T. BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV-07-76-N-EJL-LMB |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CITY OF SANDPOINT, et al., | ) | Re: Docket Nos. 23 and 28 |
| | ) | |
| | ) | **ORDER** |
| | ) | |
| Defendants. | ) | Re: Docket No. 52 |
| _____ | ) | |

Currently pending before the Court are Defendants' (1) Motion for Summary Judgment of Officer Higbee, Detective Ryan, Detective Feldhausen, Detective Dressel, and Captain Adams (Docket No. 23); (2) Comprehensive Motion for Summary Judgment (Docket No. 28); and (3) Motion to Strike Affidavit of Ron Martinelli, Ph.D. (Docket No. 52). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation and Order:

## I. BACKGROUND

This matter relates generally to Plaintiff's July 30, 2004 demolition of a building in Sandpoint, Idaho. After setting off concussion charges with dynamite to loosen the nails within the building, the Sandpoint Police Department was called to investigate. Upon arriving, the police encountered a number of individuals at the scene, including Plaintiff. After a brief discussion, police officers handcuffed and detained Plaintiff.

The circumstances contributing to Plaintiff's detention are not altogether clear. According to the record, it appears that following the explosion, a water pipe had burst. As Plaintiff attempted to investigate and/or turn off the water, police officers handcuffed him and

**REPORT AND RECOMMENDATION AND ORDER - 1**

escorted him to the rear seat of a nearby patrol car.  Subsequently, Plaintiff was read his Miranda rights and later arrested for resisting an officer and obstructing an investigation.

The overall thrust of Plaintiff's claims center on the manner in which he was handcuffed and detained.[1]  Specifically, Plaintiff brings claims against the City of Sandpoint, the police officers allegedly involved at the scene of the explosion that day, and certain fire-firefighters who arrived at the scene.  Although difficult to fully discern from either Plaintiff's Complaint or Plaintiff's responses to Defendants' summary judgment efforts, Plaintiff appears to be bringing Constitutional claims, § 1983 claims, and several state and common law claims.

## II.  REPORT

**A.      Motion for Summary Judgment: The Standard**

Motions for summary judgment are governed by FRCP 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to

---

[1]  At his deposition, Plaintiff stated:

Q:      So your complaint is, and correct me if I am wrong, is not that you were handcuffed, it's how you were handcuff[ed]?

A:      Correct.

Q:      Okay.  Has nothing to do with the fact that you were detained?

A:      Well, yeah, that has part to do with it.

Q:      Okay.  Explain that to me.

A:      I never got to finish my post blast inspection which is required by federal.

Q:      But the primary complaint then is that handcuffs were too tight?

A:      The injury, yeah.

*See* Buck Depo. at 117:13-25 (Docket No. 23, Att. 4).

**REPORT AND RECOMMENDATION AND ORDER - 2**

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party meets its initial burden, then the nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989) (citation omitted).[2] "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding a motion for summary judgment must be denied when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

---

[2] FRCP 56(e)(2) goes on to state:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See* Fed. R. Civ. P. 56(e)(2).

**REPORT AND RECOMMENDATION AND ORDER - 3**

It is also important to keep in mind for the purposes of these two pending motions for summary judgment that it is not the court's obligation "to scour the record in search of genuine issues of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  Instead, it is up to the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.  *Id*. Nonmoving parties fail in this respect by either not responding to a motion for summary judgment or, in contrast, bombarding the court with simply too much information.  *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) ("[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts.  But if the nonmoving party fails to discharge that burden - for example, by remaining silent - its opportunity is waived and its case wagered."); *see also Keenan*, 91 F.3d at 1279 ("The Keenans' counsel certainly cannot be accused of remaining silent, but by submitting an [excerpt of record] that obfuscates rather than promotes an understanding of the facts, he has assisted neither the court not his clients.")

**B.       Defendants' First Motion for Summary Judgment (Docket No. 23)**

The police report following the July 30, 2004 incident identifies a complete list of all the officers involved; they are: Sergeant Bailey, Sergeant Wheeler, Detective Feldhausen, Detective Dressel, Detective Coon, Detective Higbee, Officer Wiedebush, Officer Ryan, Officer Murphy, Chief Lockwood, and Deputy Van Hyning.  *See* Police Report, attached as Ex. A to Vandervelde Aff. in Supp. of Mot. for Summ. J. (Docket No. 23, Att. 4).  Only Detective Higbee, Officer Ryan, Detective Feldhausen, and Detective Dressel (along with firefighter Michael Adams) move for summary judgment within Defendants' First Motion for Summary Judgment (Docket No. 23).

**REPORT AND RECOMMENDATION AND ORDER - 4**

These moving Defendant argue that, because they were not individually involved with the allegedly actionable conduct, they can only be accountable for bystander liability. *See* Memo. in Supp. of Mot. for Summ. J., p. 3 (Docket No. 23, Att. 2) (citing *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982) (holding that officers who were not present at time of alleged assault could not be held liable in § 1983 action); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (granting arresting officers' motion for summary judgment because officers had no "realistic opportunity" to prevent attack committed by another officer)).

Each of the above-mentioned moving Defendants submits an affidavit supporting the proposition that, for each of them, there can be no bystander liability:

1.   Detective Higbee

Within his Affidavit, Detective Higbee states that when he arrived at the scene, he spoke briefly to Plaintiff about the events that occurred, but was "thereafter directed to set up a safety perimeter around the Building." *See* Higbee Aff., ¶ 6 (Docket No. 23, Att. 8).  Importantly, at the time Detective Higbee spoke with Plaintiff, Plaintiff was neither detained, under arrest, nor placed in handcuffs. *Id.* at ¶ 7.  In short, Detective Higbee "had no involvement in the detainment, arrest, handcuffing, transportation, or booking of Mr. Buck, nor did [he] directly observe any of these events." *Id.* at ¶ 14.

Plaintiff's deposition similarly highlights Officer Higbee's limited involvement:

Q:   Okay.  What about Officer Higbee?

A:   I honestly couldn't remember if I talked to him there or not.  He wasn't immediately involved in everything there, but I couldn't be certain.

Q:   Okay.  When you say he wasn't immediately involved, what do you mean?

A:   He wasn't the one – the officers coming at me.

Q:   Okay.  What do you believe he did incorrectly and why are you suing him?

**REPORT AND RECOMMENDATION AND ORDER - 5**

A:      Well, he didn't help.

Q:      But you never had any verbal interaction with him?

A:      I don't remember

*See* Buck Depo. at 113:12-24 (Docket No. 23, Att. 4).

2.      Officer Ryan

In his Affidavit, Officer Ryan testified that, after arriving at the scene, "[his] only actions consisted of traffic control at Fifth and Poplar approximately eighty to one hundred yards away from the entrance to the Panhandle Building, the location where [he] underst[ood] the arrest to have occurred."  *See* Ryan Aff., ¶ 5 (Docket No. 23, Att. 6).  Like Officer Higbee, Officer Ryan stated that "[he] did not have any involvement in the detainment, arrest, handcuffing, transportation, or booking of Mr. Buck, nor did [he] observe any of these events."  *Id*. at ¶ 8

Plaintiff's deposition likewise does not associate Officer Ryan with Plaintiff's complaints:

Q:      You don't believe that he was hostile towards you?

A.      I honestly don't remember.

Q:      Officer Ryan, did you speak to him on July 30, 2004?

A:      I don't remember.

Q:      Did you ever ask him to loosen your handcuffs?

A:      I don't remember.

*See* Buck Depo. At 108:22-23;109:4-8 (Docket No. 23, Att. 4).

3.      Detective Feldhausen

At the time Detective Feldhausen arrived at the scene, Plaintiff was already detained and in a patrol car.  *See* Feldhausen Aff., ¶ 6 (Docket No. 23, Att. 9).  Moreover, Detective Feldhausen's "only actions at the Panhandle Building location consisted of traffic and perimeter

**REPORT AND RECOMMENDATION AND ORDER - 6**

control at Fifth and Alder, and taking several photographs which [he] believe[s] were taken after Mr. Buck was transported." *Id.* at ¶ 7.  Like the other police officers, Detective Feldhausen "did not have any involvement in the detainment, arrest, handcuffing, transportation, or booking of Mr. Buck, nor did [he] observe any of these events." *Id.* at ¶ 9

Plaintiff's deposition reveals that Detective Feldhausen did not leave much of an impression upon him:

Q:      Who is Officer Feldhausen?

A:      Police Officer.

Q:      Okay.  What was his interaction?

A:      I am not positive.

Q:      Okay.  Do you know if he was present?

A:      Yeah, he was present.

Q:      Okay.  What are you alleging he did wrong or incorrectly in this lawsuit?

A:      Well, he didn't assist me.

Q:      Assist you how?

A:      In the, you know, on the, you know, loosening handcuffs or anything.

Q:      Did you ever tell him that you're handcuffs were too tight?

A:      I don't believe he got within range for me to say anything to him.

Q:      Did you ever call for him?

A:      Well, I yelled from the police car, but when it's all locked up and they're quite a ways away you don't really get much answer.

Q:      So you never spoke to Officer Feldhausen?

A:      I don't believe so.

Q:      And he didn't place the handcuffs?

**REPORT AND RECOMMENDATION AND ORDER - 7**

A:      I don't know.

Q:      Did he escort you

A:      I never saw the police officers behind me.  I never saw their face.

Q:      You didn't see who was behind you?

A:      Not exactly, no.

*See* Buck Depo., pp. 106:2-21; 107:6-14 (Docket No. 23, Att. 4).

4.      <u>Detective Dressel</u>

Detective Dressel states that his "only actions consisted of securing a safety perimeter around the building to ensure that any subsequent explosions would not result in injury to unsuspecting citizens."  *See* Dressel Aff., ¶ 4 (Docket No. 23, Att. 7).  Like the others, Detective Dressel "did not have any involvement in the detainment, arrest, handcuffing, transportation, or the booking of Mr. Buck, nor did [he] observe any of these events."  *Id*. at ¶ 9.

As related to Detective Dressel, Plaintiff's Deposition is not any more enlightening:

Q:      Who's Officer Dressel?

A:      A Sandpoint detective I believe.

Q:      Okay.  Did you see him at the scene on July of 2004?

A:      I remember seeing him there, but I don't know what he was doing or where he was at.

Q:      Did you ever have any direct interaction with him?

A:      At the scene?  I don't believe so.

Q:      Okay.  What about after you left the scene?

A:      I don't believe so.

*See* Buck Depo., pp. 109:9-18 (Docket No. 23, Att. 4).

**REPORT AND RECOMMENDATION AND ORDER - 8**

5.      Captain Adams

Captain Adams is a fire captain with the City of Sandpoint.  *See* Adams Aff., ¶ 2 (Docket No. 23, Att. 5).  When he arrived on the scene, Captain Adams "secured a safety perimeter around the building of approximately fifty to eighty yards to ensure that any subsequent explosions would not result in injury to unsuspecting citizens."  *Id*. at ¶ 5.  Finally, according to his Affidavit, Captain Adams "did not have any involvement in the detainment, arrest, handcuffing, transportation, or booking of Mr. Buck, nor did [he] observe any of these events."  *Id*. at ¶ 7.

Again, Plaintiff's deposition is not helpful:

Q:      What about the two gentlemen from the fire department, Adams –

A:      I believe there might have been a brief comment, but I don't remember what it was.

Q:      And this was on July 30th?

A:       Yes.

Q:      What about the other fireman, Ryan?

A:      I don't remember.

*See* Buck Depo. at 114:5-12 (Docket No. 23).

Defendant Adams also argues that, as a fireman, he is not responsible for Plaintiff's detention and arrest.  *See* Memo. in Supp. of Mot. For Summ. J., pp. 5-6 (Docket No. 23, Att. 2). More to the point, Captain Adams argues that it is not within his power to participate in the conduct Plaintiff now complains of.  *See* id. at p. 6.[3]

Plaintiff does not appear to respond to Defendants' arguments.  Indeed the names of these individuals do not appear to even be in Plaintiff's ultimate response.  Under LR 7.1, "[i]n the

---

[3] Defendants later make this same argument as to all the firefighters.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 18-19 (Docket No. 28, Att. 3).

**REPORT AND RECOMMENDATION AND ORDER - 9**

event an adverse party fails to file any response documents required to be filed under this rule in a timely manner, such failure may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application."  Regardless, it does appear that Defendants have positioned themselves to remove them from bystander liability.  Indeed, during oral argument, Plaintiff conceded that these moving Defendants should be dismissed from this action.[4]

Therefore, in light of Defendants' arguments, the supporting affidavits, the deposition testimony, Plaintiff's lack of a written response coupled with LR 7.1, and concessions made during oral argument, it is recommend that Defendants' First Motion for Summary Judgment (Docket No. 23) be granted as to each moving Defendant, and also to Detective Coon, Officer Murphy, and Deputy Van Hyning (*see supra* at n. 4, p. 10).

## C.      Defendants' Second Motion for Summary Judgment (Docket No. 28)

The particular claims that Plaintiff is pursuing are, unfortunately, not altogether clear; the Complaint suggests the possibility of many claims, yet fails to explicitly outline them as specific causes of action.  For example, Plaintiff alleges there was no probable cause for the physical restraint and that Defendants' collective actions constituted "excessive use of force and false imprisonment and conspiracy to use said force and make said false imprisonment, all in violation of the Fourth, Ninth, and the Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983."  *See* Compl. at ¶¶ 17 & 18 (Docket No. 1, Att. 4).  Along these lines, Plaintiff later claims that Defendant City of Sandpoint failed to adequately discipline, train, or otherwise direct police officers and firemen.  *See* Compl. at ¶¶ 23 - 25 (Docket No. 1, Att. 4).

---

[4]  Plaintiff also acknowledged during oral argument that Detective Coon, Officer Murphy, and Deputy Van Hyning should likewise be dismissed, leaving the City of Sandpoint, Sergeant Bailey, Officer Wiedebush, Sergeant Wheeler, Chief Lockwood, and Fireman Tyler as the only remaining Defendants.

**REPORT AND RECOMMENDATION AND ORDER - 10**

In addition, Plaintiff states that Defendants' actions "deprived the Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States and the State of Idaho, in particular the right to be secure in his person and property, to be free from excessive use of force, to be free from the infliction of cruel and unusual punishment upon his person, to be protected by police officers and firemen, and to due process of law." *Id*. at ¶ 26.

Further, Plaintiff alleges: "By these actions, the defendants have deprived the Plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. section 1983 and the Idaho Constitution, statutes and common law." *Id*. at ¶ 27. In the next paragraph Plaintiff asserts that, "[a]dditionally, the actions of the Defendants violated the following clearly established federal constitutional rights of the Plaintiff: freedom from the unreasonable seizure of his person; freedom from the deprivation of his liberty without due process of law; freedom from the use of excessive and unreasonable force; freedom from summary punishment; freedom from search of his person without probable cause; and freedom from an invasion of his privacy." *Id*. at ¶ 28.

Finally, Plaintiff raises a litany of state law claims, including "assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, abuse of criminal process, and negligent hiring, retention, and supervision" and conspiracy. *Id*. at ¶¶ 37 & 40.

From all this, it is difficult to distill the exact claims that Plaintiff pursues. In response, Defendants' Second Motion for Summary Judgment (Docket No. 28) impressively attempts to dissect Plaintiff's Complaint to identify, address, and dispose all possible causes of action.[5]

---

[5] Because Defendants' briefing in this respect is lengthy, the following Report and Recommendation is unusually long.

**REPORT AND RECOMMENDATION AND ORDER - 11**

1.    <u>Ninth Amendment Claims</u>

Defendants argue that "the Ninth Amendment 'has never been recognized as

independently securing any constitutional right, for purposes of a civil rights claim.'" *See* Mem.

in Supp. of Comprehensive Mot. for Summ. J., p. 3 (Docket No. 28, Att. 3) (citing *Strandberg v.*

*City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)).  In other words, the Ninth Amendment is

"not a source of rights as such; it is simply a rule about how to read the Constitution."  *San*

*Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (quoting Laurence

H. Tribe, *American Constitutional Law* 776 n. 14 (2d ed. 1988)); *see also Murphy v. Idaho*, 2007

WL 1959055 at *1 (D. Idaho 2007) (unreported) ("The Court notes that the Ninth Amendment

provides no cause of action for relief."); *Payne v. Kempthorne*, 2005 WL 1206676, *4 (D. Idaho

2005) (unreported) ("The Ninth Amendment is not the basis for a private cause of action under

the civil rights statute.  This claim is dismissed with prejudice.") (internal citation omitted).

Plaintiff's Opposition does not respond to Defendants' arguments.  Indeed, Plaintiff's

Opposition does not discuss the Ninth Amendment at all.  Given the state of the law,

Defendants' arguments, Plaintiff's failure to respond, and Local Rule 7.1, it would appear that,

to the extent Plaintiff makes a Ninth Amendment violation claim, that claim should be

dismissed.

2.    <u>Fifth Amendment Claims</u>

Defendants argue that Plaintiff has not adequately established his Fifth Amendment

claim.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 3 (Docket No. 28, Att. 3)

("There is no further information as to what specific right under the Fifth Amendment was

allegedly violated.") It appears clear that Plaintiff has failed to present any evidence in either his

pleadings or in response to Defendants' arguments establishing a violation of his Fifth

**REPORT AND RECOMMENDATION AND ORDER - 12**

Amendment rights.[6]   Therefore, in considering applicable law, Defendants' arguments,

Plaintiff's failure to respond, and Local Rule 7.1, it would appear that, to the extent Plaintiff

makes a Fifth Amendment violation claim, that claim should be dismissed.

>   3.   <u>Claims Premised Upon Plaintiff's Criminal Prosecution</u>

At paragraph 19 of his Complaint, Plaintiff asserts:

> [T]he Defendants in an attempt to justify their inappropriate actions towards
> and to the Plaintiff worked to require Plaintiff to stand trial for the above said
> charge.  Plaintiff was exonerated and found innocent by a jury of his peers of
> any criminal act.  The Plaintiff at no time committed any offense against the
> laws of the State of Idaho for which an arrest may be lawfully made.

*See* Compl. at ¶ 19 (Docket No. 1, Att. 4).  It appears Plaintiff is attempting to justify his § 1983

claims by virtue of the corresponding criminal prosecution.  If correct, Defendants argue that

police officers are immune from such claims.  *See* Mem. in Supp. of Comprehensive Mot. for

Summ. J., pp. 3-4 (Docket No. 28, Att. 3).

In *Newman v. County of Orange*, 457 F.3d 991 (9th Cir. 2006), the Ninth Circuit Court of

Appeals addressed this issue, commenting:

> We have long recognized that "[f]iling a criminal complaint immunizes
> investigating officers . . . from damages suffered thereafter because it is
> presumed that the prosecutor filing the complaint exercised independent
> judgment in determining that probable cause for an accused's arrest exists at
> that time.  The plaintiff bears the burden of producing evidence to rebut such
> presumption. . . . .
>
> To rebut the presumption of independent judgment and to survive summary
> judgment on a malicious prosecution claim, a plaintiff must provide more than
> an account of the incident in question that conflicts with the account of the
> officers involved.

*Newman*, 457 F.3d at 993 & 995.

---

> [6]  There is evidence that Plaintiff was given his was Miranda rights prior to questioning.
> *See* Wheeler Aff., ¶ 11 (Docket No. 28, Att. 9).

**REPORT AND RECOMMENDATION AND ORDER - 13**

Here, Defendants offer a number of affidavits from the Defendant officers, each testifying that he was not responsible for the decision to prosecute Plaintiff.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 4 (Docket No. 28, Att. 3).  Moreover, the City of Sandpoint prosecuting attorney, Lori Meulenberg, issued a separate affidavit stating in no uncertain terms that "the decision to prosecute the citation through court proceedings was left to my judgment and discretion alone and such decision was not made by police or fire personnel." *See* Meulenberg Aff., ¶ 6 (Docket No. 28, Att. 12).

Plaintiff again does not respond to Defendants' arguments in this respect.  Therefore, to the extent Plaintiff is actually making a claim under § 1983 related to his criminal prosecution, based upon the case law, Defendants' arguments, Plaintiff's failure to respond, and Local Rule 7.1, Plaintiff's claim seeking relief based on criminal prosecution should be dismissed.

4.   Fourth Amendment Claims and § 1983 (Unlawful Detention and Arrest)

Defendants argue that Plaintiff has alleged a number of claims pursuant to § 1983 for violations of his Fourth and Fourteenth Amendment Rights for unlawful detention and arrest. *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 4 (Docket No. 28, Att. 3).  However, it is not clear whether Plaintiff's claims relate specifically to the detention itself, or to the conduct and events surrounding the detention.  *See supra* at n. 1, p. 2.  Regardless, to the extent such a claim is made, Defendants argue first, that sufficient reasonable suspicion existed for Plaintiff's detention, and, second, that probable cause existed for Plaintiff's arrest.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 5-11 (Docket No. 28, Att. 3).

a.   *Plaintiff's Detention*

Defendants highlight the fact that, "to detain a suspect, a police officer need only have a reasonable suspicion, or 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in

**REPORT AND RECOMMENDATION AND ORDER - 14**

criminal activity.'"  *See id*. at p. 5 (quoting *United States v. Michael*, 90 F.3d 340, 346 (9th Cir.

1996)).  When an officer has "reasonable suspicion" that criminal activity may be afoot, the

officer may conduct a limited seizure and briefly detain a person for investigative purposes.

*Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).  "Reasonable suspicion" is an abstract concept:

> It requires more than a mere hunch, but is satisfied by a likelihood of criminal
> activity less than probable cause, and falls considerably short of satisfying a
> preponderance of the evidence standard.  If an officer possesses a
> particularized and objective basis for suspecting the particular person of
> criminal activity based on specific and articulable facts, he may conduct a
> *Terry* stop.  Courts must examine the totality of the circumstances to determine
> whether reasonable suspicion existed to justify a *Terry* stop.

*Smoak v. Hall*, 460 F.3d 768, 778-79 (6th Cir. 2006).

Defendants spend considerable time discussing why Plaintiff's detention did not violate

this standard.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 6-7 (Docket No. 28,

Att. 3).  According to Defendants, the factors contributing to the officers' reasonable suspicion

and, subsequently, Plaintiff's detention include:

- Receiving a telephone call that a loud explosion occurred in downtown
  Sandpoint;

- Upon arriving at the scene, smoke was coming from the Panhandle
  Milling building;

- Plaintiff acting evasively when requested to come down from the Building
  and only appearing after several minutes thereafter;

- Plaintiff refusing to discuss the safety of the situation and turning to walk
  away from law enforcement officers despite commands to remain until
  police officers could determine the safety of the situation; and

- Plaintiff refusing to answer questions regarding the existence of any other
  explosives in the building and events that had occurred.

*See id*. at p. 6.  Without more, these factors point to a reasonable suspicion that criminal activity

may be occurring, thus justifying Plaintiff's detention.

**REPORT AND RECOMMENDATION AND ORDER - 15**

However, while Plaintiff does not specifically respond to Defendants' arguments in this respect, his incorporated Statement of Facts paints a somewhat different picture, namely:

- Plaintiff had to finalize his inspection fo the building as required by his federal dynamiting license to assure that there were no lose pieces of debris or other materials that would constitute a hazard or injure others in the vicinity.  *See* SOF No. 72 (Docket No. 45);

- After he conducted his inspection, Plaintiff proceeded to come down from the roof to talk with the officers.  *See id.* at SOF No. 73;

- While talking with Officer Bailey, Plaintiff noticed that some water pipes had broken and water was pouring out from underneath the building so he proceeded to attempt to go into the building to shut the water off so it would not damage the materials he was attempting to salvage.  *See id.* at SOF No. 74;

- Officer Bailey did not consider Plaintiff a criminal, did not consider him violent, did not consider him a threat to police, and was not personally aware that Plaintiff constituted a problem for the police.  *See id.* at SOF No. 36;[7]

- At the time of the incident, there was no yelling, no order from Plaintiff telling the police officers and firemen to leave his property, and Plaintiff affirmatively told them that everything was under control.  *See id.* at SOF No. 37;

- At the time Plaintiff was handcuffed, he had not previously been ordered by any police officer to stay right where he was while talking to the officers.  *See id.* at SOF No. 42;

- Officer Bailey did not believe that Plaintiff was attempting to flee the premises.  *See id.* at SOF No. 43;

- Plaintiff's sole perceived act of resistance, according to Officer Bailey, was a stiffening of his arm muscles as he was being handcuffed.  *See id.* at SOF No. 44; and

- Officer Wheeler testified that at no time when Plaintiff was in his presence did Plaintiff resist, threaten any officer, or commit any crime.  *See id.* at SOF NO. 64.

---

[7]  Still, upon arriving at the scene, Officer Bailey did believe that a crime had been committed - unlawful use of explosives - in addition to public safety issues.  *See* Bailey Depo. At 53:19-25 (Docket No. 50, Att. 10).

**REPORT AND RECOMMENDATION AND ORDER - 16**

In short, the circumstances contributing to the police officers' "reasonable suspicion" to justify Plaintiff's detention may appear to conflict to a certain extent.  However, when considering their response to an *explosion* within city limits that had the potential of injuring the public, it is clear that the requisite "reasonable suspicion" to detain Plaintiff for questioning exists.  As Officer Wheeler appropriately stated during his deposition:

Q:      Is there a technical difference, in your mind, between detained and arrested?

A:      Yes.

Q:      What is it?

A:      Well, the technical, if they're arrested, they're going to jail.  If they're being detained, then you're conducting an investigation, that's the difference.  They're not free to go, but that doesn't mean they're going to be arrested, being taken to jail.  It was at the time that there was an investigation, trying to figure out if there was more dynamite, if it was stored different places, and it was imperative, because of the exigent circumstances, that we needed to find out if there was more explosives on the scene.  So, he was not free to leave the scene.  He was being detained.

*See* Wheeler Depo. at 29:8-24 (Docket No. 47)

Therefore, despite the nuanced differences leading up to Plaintiff's detention, it appears clear that, based upon the possibility of Plaintiff's commission of a crime (unlawful use of explosives), coupled with the commensurate public safety component, reasonable suspicion existed to detain Plaintiff.  Thus, to the extent Plaintiff is making an unlawful detention claim, that claim should be dismissed.

> b.      *Plaintiff's Arrest*

According to Defendants, "[p]robable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the plaintiff had committed or was committing an offense."  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 7 (Docket No. 28, Att. 3) (citing *Hart v. Parks*, 450 F.3d 1059, 1065-66 (9th Cir. 2006)).

**REPORT AND RECOMMENDATION AND ORDER - 17**

Ultimately, Plaintiff was not charged with any offense related to the discharge of detonating dynamite; instead, he was charged with resisting and obstructing an officer. Therefore the probable cause inquiry focuses on this arrest. Based upon the conflicting accounts of the situation leading up to Plaintiff's arrest (*see supra* at pp. 15-17), it cannot be said that there is no reasonable dispute within the record that a prudent man would believe that the plaintiff had committed or was committing the offense of resisting and obstructing an officer. While under the officers' version of the events, Plaintiff may have resisted or obstructed the investigating offers; under Plaintiff's version of the facts, it is open to dispute. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 852 (2nd Cir. 1996) ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and knowledge of the officers.")

The difficulty in resolving this issue at this stage is that Plaintiff may not even be making a false arrest claim given the ambiguity of his Complaint and his failure again to respond to Defendants' arguments in this respect. These factors raise questions as to whether he actually intended to argue that no probable cause existed to support Plaintiff's arrest.

However, even if there is no probable cause to arrest, a police officer may nonetheless be immune from a claim of false arrest under the doctrine of qualified immunity.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-prong analysis for qualified immunity cases. First, a court must determine whether the facts alleged (resolving all disputes of fact in favor of injured party) show that the officer's conduct violated a constitutional right. In short, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id*. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

**REPORT AND RECOMMENDATION AND ORDER - 18**

If, however, the court determines that the conduct did violate a constitutional right, the second prong under *Saucier* requires the court to determine whether the violated right was "clearly established." A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. Even if the violated right is clearly established, the Court in *Saucier* recognized that it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he or she faces. *Id.* In *Saucier*, the Court therefore held that if "the officer's mistake as to what the law requires is reasonable ... the officer is entitled to the immunity defense." *Id.* at 205.

Construing all facts in Plaintiff's favor, an argument can reasonably be made that the officers' conduct may have violated his Fourth Amendment right. Still, it is not sufficiently clear that a reasonable official would understand that what was done violated that right under *Saucier*. In other words, the officers' mistake, if in fact there is one, is nonetheless a reasonable mistake when considering: (1) that an explosion took place, (2) the Sandpoint Police and Fire Departments were dispatched, (3) Plaintiff failed to come immediately down from the roof, and (4) Plaintiff turned and began to walk away while Officer Bailey was questioning him. While there may be legitimate reasons for Plaintiff's conduct in hindsight, it cannot be said that a reasonable officer would not believe that Plaintiff was trying to evade the authorities. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized."); *see also Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) ("[Qualified immunity] provides ample protection to all but the plainly incompetent or those who knowingly violate the law . . . . If officers of reasonable competence would disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized.") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**REPORT AND RECOMMENDATION AND ORDER - 19**

Indeed, Plaintiff's *own expert*, Ron Martinelli stated that "[b]y not complying immediately with defendant Sgt. Bailey's direction that Plaintiff Buck come down from the rooftop and to meet with them, Plaintiff Buck increased the defendant officer's suspicions that criminal activity was possibly afoot. . . . By refusing a lawful detention by defendant officers involved in lawful duties, the Plaintiff was resisting the detention and obstructing an investigation.  This is a misdemeanor crime committed in the presence of the detention officers." *See* Ex. B. to Vandervelde Aff. (Docket No. 28, Att. 4).

Notably, Plaintiff does not address Defendants' qualified immunity arguments within his opposition paperwork.  Therefore, if Plaintiff is making a false arrest claim, it would seem that summary judgment cannot be granted solely on the issue of probable cause given the existence of genuine issues of material fact.  Still, it appears that qualified immunity exists to immunize Defendant officers from their conduct as it relates to any false arrest claim and, on this latter basis, supports Defendants' summary judgment efforts.  Therefore, to the extent applicable, Plaintiff's claim for unlawful arrest should be dismissed.[8]

### 5.  Fourth Amendment Claims and § 1983 (Use of Handcuffs)

It is again unclear whether Plaintiff is making a claim based upon the officers' mere *use* of handcuffs in detaining Plaintiff.  According to Defendants', "[t]he inquiry utilized is whether the use of handcuffs is justified in light of the totality of the circumstances."  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 12 (Docket No. 28, Att. 3) (citing *Meridith v. Erath*, 342 F.3d 1057 (2003)).

---

[8]  To this end, Defendants also move for summary judgment as to the remaining firefighter Defendant(s).  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 18 & 19 (Docket No. 28, Att. 3).  Because there is no unlawful detention or arrest, there can be no corresponding claim against the firefighter Defendants.  Moreover, Plaintiff offers no response to Defendants' argument that these firefighters had no authority to cause or initiate such conduct.  Regardless, absent an unlawful detention or arrest, there is no actionable claim in this limited respect.

**REPORT AND RECOMMENDATION AND ORDER - 20**

Regardless, based upon the analysis above, even if there are disputed facts leading up to the officers' use of handcuffs to detain Plaintiff while conducting an initial investigation, these officers are entitled to invoke qualified immunity as to any such hypothetical claim. To be sure, the thrust of Plaintiff's Complaint (as reflected in his own expert's report) relates not to the fact that handcuffs were used, but rather the force used in employing those handcuffs when detaining Plaintiff. Therefore, to the extent such a claim is made, this claim should be dismissed.

  6. <u>Fourth Amendment claims and § 1983 (Excessive Force)</u>

There should be no dispute that Plaintiff is making an excessive force allegation against Defendants with respect to the manner in which the handcuffs were applied. Although Defendants may be entitled to summary judgment as to Plaintiff's unlawful arrest claim (*see supra* at pp. 17-20), this Court is still required to determine whether, under the circumstances, the arresting officers used an unreasonable amount of force when taking Plaintiff into custody. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa.")

To evaluate an excessive force claim, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386 (1989). As Defendants acknowledge, the Ninth Circuit has made clear that "tight handcuffing can constitute excessive force." *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 13 (Docket No. 28, Att. 3) (citing *Lalonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000)). Typically, liability in such instances is appropriate where a request is made to loosen the handcuffs, the officer is aware that the handcuffs are too tight, or there is evidence of bodily injury as a result of the handcuffing application. *See* Mem. in Supp. of Comprehensive

**REPORT AND RECOMMENDATION AND ORDER - 21**

Mot. for Summ. J., p. 13 (Docket No. 28, Att. 3) (citing *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002)).

Under Heading VII of their briefing, Defendants incorrectly argue that Plaintiff made no requests that his handcuffs be loosened. *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 13 (Docket No. 28, Att. 3). Rather, it is clear from listening to the videotape of the incident that Plaintiff requested that his handcuffs be loosened. *See* Ex. B, referenced within Notice of Lodging (Docket No. 28, Att. 5). Moreover, Officer Bailey admitted as much during his deposition:

Q:    Do you hear him saying on the tape, "It's awfully tight," words to that effect?

A:    No.

Q:    You didn't hear that on the tape?

A:    I think the term he used was, "You'd better loosen these cuffs."

*See* Bailey Depo. at 82:17-24 (Docket No. 50, Att. 11). Officer Wiedebush likewise testified that Plaintiff made a request to loosen the handcuffs:

Q:    Do you remember Mr. Buck complaining about the cuffs, the tightness of the cuffs?

A:    I remember him saying that, something about, something about "you have to loosen them," or something like that, when they're being applied, or "you don't have to be rough," or something to that extent.

*See* Wiedebush Depo. at 25:24-26:5 (Docket No. 49).

Later, Defendants argue that "[t]he only comments ever made by Plaintiff were during the process of handcuffing itself. *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 13 (Docket No. 28, Att. 3). In contrast, Plaintiff claims that he complained "several times to the officers that the handcuffs were too tight and stated that really hurts." *See* SOF 77 (Docket No. 45). At his deposition, Plaintiff also testified:

Q:    And those handcuffs you said were immediately too tight?

**REPORT AND RECOMMENDATION AND ORDER - 22**

A:   Oh, yes.  I said, "That really hurts" several times and they did nothing.

Q:   And those were your exact words, "That really hurts"?

A:   Yes.

Q:   Okay, Did you say something along the lines of loosen the handcuffs or anything like that?

A:   Oh, later.

Q:   But not at that point?

A:   No.

Q:   Okay

A:   I was talking to them on – when the officer was leading me away telling him that they were – that really hurts and he never said a word.

Q:   Did you make any requests to have them loosened at that point?

A:   Several times later and they were completely ignored.

Q:   But I am talking about as you were handucff[ed] and walked to the car.

A:    No.  I just told them that really hurts.

                                           ...

Q:   Did you ask him to loosen the handcuffs?

A:   No, because it was obvious they weren't going to do anything.

Q:   But you didn't make that request?

A:   I requested it. Yeah, I did.  I believe I did request that they be loosened and that my hands were numb now that I recall that and he said that they'll be taken off at the jail.

See Buck Depo. at 89:12-90:9; 101:16-23 (Docket No. 23, Att. 4).  Moreover, it appears that the recording of the incident was turned off once Plaintiff was placed in the car.  Therefore, it is impossible (unlike the moments leading up to the detention itself) to confirm whether Plaintiff made any additional requests to loosen the handcuffs.

**REPORT AND RECOMMENDATION AND ORDER - 23**

Disputed facts clearly exist with respect to complaints made as to the force used to apply handcuffs to Plaintiff.  According to Plaintiff, he made numerous complaints; according to Defendants, Plaintiff did not.  This disputed evidence in the record prevents summary judgment as on this claim.

Further, this difference in interpreting the underlying facts may jeopardize the application of the qualified immunity to Plaintiff's excessive force claim.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("Where such disputes exist, summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party.").[9]  For the same reasons that Defendants are not entitled to summary judgment on the merits of an excessive force claim (i.e., because there is a genuine issue of material fact as to the frequency of Plaintiff's requests to loosen the handcuffs), Defendants are not entitled to the summary disposition of such a claim on the basis of qualified immunity.  *See Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("In the case at bar, the same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage."); *Dellamore v. Stenros*, 886 F. Supp. 349, 352 (S.D.N.Y. 1995) (finding that

---

[9]  *See also  Santos*, 287 F.3d at 853 ("Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.  This is because police misconduct cases almost always turn on a jury's credibility determinations.") (internal citations omitted); *Thomas v. Roach*, 165 F.3d 137, 143 (2nd Cir. 1999) (dismissal on basis of qualified immunity defense is not appropriate where "there are facts in dispute that are material to a determination of reasonableness."); *Breen v. Garrison*, 169 F.3d 152 (2nd Cir. 1999) (issues of material fact which existed as to the excessive force claim precluded summary judgment based on a qualified immunity defense); *Amaker v. Haponik*, 2000 WL 343772, at *6 (S.D.N.Y. Mar. 31, 2000) (complaint should not be dismissed on qualified immunity grounds where "the facts [were] not sufficiently developed at this stage in the proceedings to conclude that a reasonable officer would not have concluded that defendants' actions were unlawful").

**REPORT AND RECOMMENDATION AND ORDER - 24**

material factual disputes exist on the issue of qualified immunity for the same reasons that court denied the motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim).

Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claim should be denied when looking to either the claim itself or the application of the qualified immunity defense.

7.      Fourth Amendment Claims and § 1983 (No Warrant)

There is no evidence in the record that, premised upon a Fourth Amendment claim, Plaintiff is arguing that Defendants conducted an improper search of the premises without a warrant.  Still, Defendants argue that a warrant is not necessary under exigent circumstances such as where an explosion takes place and fire/smoke emanate from a building.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 13 (Docket No. 28, Att. 3) (citing *Fisher v. City of San Jose*, 509 F.3d 952 (9th Cir. 2008)).  This Court agrees.  Even though this potential claim appears beyond Plaintiff's intended allegations, to the extent such a claim is actually being made, it should be dismissed.

8.      Fourteenth Amendment Claims

Although referenced in his Complaint, no argument is made as to the law or the applicable facts supporting such a violation anywhere within Plaintiff's submissions. Defendants move for summary judgment accordingly.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 14-15 (Docket No. 28, Att. 3).  Defendants should not be required to defend against a hollow, ambiguous claim that perhaps is not even being asserted here. Therefore, to the extent such a claim is actually being made, it should be dismissed.

**REPORT AND RECOMMENDATION AND ORDER - 25**

9.      Municipal Liability and § 1983

Plaintiff and Defendant appear to agree that, to establish liability against a city or municipal entity, a plaintiff must show "either that his constitutional rights were violated pursuant to a policy, practice, or custom of the County, or that the County had a policy of inaction and such inaction amounted to a deliberate indifference to [the plaintiff's] constitutional rights."  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 20 (Docket No. 28, Att. 3) (quoting *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1977)); *see also* Pl.'s Brief in Opp. to Defs.' Mots. for Summ. J., pp. 17 & 18 (Docket No. 44).

Yet, beyond citing the law speaking to the elements of municipal liability, Plaintiff fails to highlight any set of facts suggesting the requisite "policy" endorsed by the City of Sandpoint or how the individual employees followed it.  *See* Rep. in Supp. of Comprehensive Mot. for Summ. J., p. 12 (Docket No. 51) ("This is the sum total of Plaintiff's argument: a city may be liable for the actions of its employees.  There is no argument showing what facts create an issue precluding summary judgment on this issue.  There is no argument what unconstitutional policy or custom the city has enacted, or how the individual employees have followed it.").

Further, the Court's independent review of the record (doing what Plaintiff himself should have done to oppose Defendants' arguments) fails to reveal even the possibility of the existence of such an offensive policy.  Therefore, to the extent Plaintiff's claim for municipal liability is actually pursued, it should be dismissed.

10.     Failure to Discipline and § 1983

Plaintiff states that "[a] municipality can be held liable pursuant to § 1983 if it knew that the officer accused of using excessive force had a history of complaints and was not offered psychological counseling, or if it did not discipline or reassign the officer in question."  *See* Pl.'s Brief in Opp. to Defs.' Mots. for Summ. J., p. 18 (Docket No. 44) (citing *Williams v. Chicago*,

**REPORT AND RECOMMENDATION AND ORDER - 26**

658 F. Supp. 147 (N.D. Ill. 1987)).  Nothing more.  *See* Rep. in Supp. of Comprehensive Mot. for Summ. J., p. 13 (Docket No. 51) ("In this case, Plaintiff makes no argument that there were such complaints or other warning signs against the individual Defendants in this case, and even if the Court were to independently search Plaintiff's Statement of Material Facts, it would be unable to find such facts.").  Without any facts applied to the law, or any such facts existing in the record, Plaintiff cannot support a failure to discipline claim.  Therefore, to the extent such a claim is actually being made, it should be dismissed.

     11.    <u>Supervisor Liability and § 1983</u>

     A supervisor is not liable for the acts of his employees where he did not act with deliberate indifference or endorse an improper policy.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 20 (Docket No. 28, Att. 3) (citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)).  In support of this claim, Plaintiff argues that the City of Sandpoint provided inadequate training relative to the use of force and restraint in terms of handcuff application.  *See* Pl.'s Brief in Opp. to Defs.' Mots. for Summ. J. p. 19 (Docket No. 44).  Specifically, Plaintiff claims that Officer Bailey had not had training in handcuff application and technique since 1991. *Id*. at p. 20; *but see Blankenhorn*, 485 F.3d at 484 ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy.")

     For issues regarding failure to train, "[t]he issue is not whether the officers had received any training - most of the deputies involved had some training, even if it was minimal at best - rather the issue is the adequacy of that training."  *Davis v. Mason County*, 927 F.2d 1473, 1483 (9th Cir. 1991).  On this point, the Supreme Court stated that if:

> the need for more or different training is so obvious, and the inadequacy so
> likely to result in the violation of constitutional rights, that the policymakers
> of the city can reasonably be said to have been deliberately indifferent to the
> need.  In that event, the failure to provide proper training may fairly be said to

**REPORT AND RECOMMENDATION AND ORDER - 27**

represent a policy for which the city is responsible, and for which the city may
be held liable if it actually causes injury.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Yet, in addition to pointing to only one officer's alleged lack of training, Plaintiff fails to

close the loop by providing evidence that this alleged lack of training was inadequate or shows a

deliberate indifference by the City of Sandpoint.  *See* Defs.' Reply in Supp. of Comprehensive

Mot. for Summ. J., p. 16 (Docket No. 51) ("Conceivably this could be a relevant fact, if Plaintiff

had shown that failure to have training since 1991 was inadequate on Defendant Bailey's part or

shows deliberate indifference by Defendant City.  Plaintiff has not shown this."); *compare*

*Blackhawk v. City of Chubbuck*, 488 F. Supp. 2d 1097, 1106 (D. Idaho 2006) (expert testimony

provided to support notion that defendant did not receive enough situational training).  Plaintiff's

expert witness, Ron Martinelli, does not address the issue of training, stating simply: "There is

insufficient training and policy information available to me to render an opinion on this issue."

*See* Ex. B. to Vandervelde Aff. (Docket No. 28, Att. 4).  In contrast, as Defendants point out,

there is evidence that Defendant police officers received significant training.  *See* Reply in Supp.

of Comprehensive Mot. for Summ. J., pp. 14-15 (Docket No. 51).

In other words, Plaintiff has failed to show any facts proving that there is inadequate

training, that the City of Sandpoint caused a deprivation of rights, or that there is any history of

abuse which put the City of Sandpoint on notice such that it had a duty to restrict, censure,

reprimand, reassign, or in any other way deal with the named individual Defendants.  Therefore,

there does not appear to be an material dispute of fact that would prohibit dismissing Plaintiff's

supervisor liability claim if, indeed, such a claim is being asserted here.[10]

---

[10]  This same analysis applies to Plaintiff's allegation that the City of Sandpoint is liable
for negligent training.  Other than mentioning the case law in passing within its Opposition,
Plaintiff fails to tie in any facts to its argument.  Therefore, any such claim should be dismissed
because Plaintiff has not met his burden.

**REPORT AND RECOMMENDATION AND ORDER - 28**

12.    <u>Conspiracy</u>

"Civil conspiracy is not, by itself, a claim for relief."  *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003).  The civil wrong committed as the objective of the conspiracy is the essence of a cause of action for civil conspiracy.  *Id*.  Here, Plaintiff alleges a civil wrong already recited within the same alleged § 1983 and Fourth Amendment violations.  Therefore, such a claim is superfluous since it neither adds to nor subtracts from Plaintiff's claims.  Accordingly, to the extent asserted, Plaintiff's conspiracy claim should be dismissed.

13.    <u>False Arrest</u>

In addition to being immune under Idaho's False Claims Act (*see infra* at p. 31), Defendants argue that Plaintiff's false arrest claim should also be dismissed as a matter of law.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 25 (Docket No. 28, Att. 3).  For the same reasons outlined above as to Plaintiff's Fourth Amendment claims and § 1983 related to Plaintiff's alleged unlawful detention and/or arrest (*see supra* at pp. 14-20), Plaintiff's false arrest claim should likewise be dismissed.

14.    <u>False Imprisonment</u>

In addition to being immune under Idaho's False Claims Act (*see infra* at p. 31), Defendants argue that Plaintiff's false imprisonment claim should also be dismissed as a matter of law.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp 25 & 26 (Docket No. 28, Att. 3).  For the same reasons outlined above as to Plaintiff's Fourth Amendment claims and § 1983 related to Plaintiff's alleged unlawful detention and arrest (*see supra* at pp. 14-20), Plaintiff's false imprisonment claim should likewise be dismissed.

15.    <u>Abuse of Process</u>

In addition to being immune under Idaho's False Claims Act (*see infra* at p. 31), Defendants argue that Plaintiff's abuse of process claim should also be dismissed as a matter of

**REPORT AND RECOMMENDATION AND ORDER - 29**

law.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 26 & 27 (Docket No. 28, Att. 3).  For the same reasons outlined above as to potential claims premised upon Plaintiff's criminal prosecution (*see supra* at pp. 13-14), Plaintiff's abuse of process claim should likewise be dismissed.

      16.    <u>Intentional Infliction of Emotional Distress</u>

      To support a claim for intentional infliction of emotional distress, Plaintiff must show (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 27 & 28 (Docket No. 28, Att. 3) (citing *Estate of Becker v. Callahan*, 140 Idaho 522, 96 P.3d 623 (2004)).  Other than conclusory statements within the pleadings and briefings, there is no evidence supporting the position that Defendants' conduct was actionably excessive, extreme, and/or outrageous.  At most, Plaintiff's expert, Ron Martinelli offered this position on Defendants' conduct:

> If it is determined through the discovery process that the defendant officers did not check the tightness of the handcuffs; or adjust the handcuffs so that they were not injuring the Plaintiff; and did not double-lock the handcuffs to prevent the handcuffs from ratcheting down on the Plaintiff's wrists; then I would opine that the force used by the defendant officers upon the Plaintiff was not objectively reasonable and was excessive.

*See* Ex. B. to Vandervelde Aff. (Docket No. 28, Att. 4).  "Not objectively reasonable and was excessive" does not necessarily translate to extreme and outrageous conduct.  Equally important, there is no evidence of the requisite severe emotional distress.  Dr. Merle Janes, Plaintiff's treating physician, only discusses Plaintiff's wrist injuries - not any alleged emotional distress.  *See* Janes Aff. (Docket No. 42)).  Finally, Plaintiff again does not address this cause of action in his opposition paperwork.  For these reasons, Plaintiff's intentional infliction of emotional distress claim, if asserted, should be dismissed.

**REPORT AND RECOMMENDATION AND ORDER - 30**

17.   <u>Invasion of Privacy</u>

Idaho recognizes the tort of invasion of privacy based on the public disclosure of private facts.  *See Nation v. State, Dept. of Correction*, 144 Idaho 177, 158 P.3d 953 (2007).  Such a claim does not apply to the facts here.  In fact, it is difficult to understand what type of claim Plaintiff is making here (if he is, in fact, making such a claim).  To the extent such a claim is interconnected within Plaintiff's existing Fourth Amendment claims, it is either inapplicable or moot.

18.   <u>Defendants' Defense: Immunity from Certain Common Law Claims</u>

Idaho Code section 6-904 states in pertinent part: "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  *See* I.C. § 6-904(3).  Here, Defendants argue that Plaintiff has failed to produce any evidence whatsoever of malice or criminal intent by the Defendants and, therefore, all claims for assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process must be dismissed.  *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., p. 21 (Docket No. 28, Att. 3).

Again, Plaintiff offers no response.  There being no good reason to dispute Defendants' argument, to the extent such claims are actually made, Plaintiff's claims of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process should be dismissed in accordance with Idaho Code section 6-904.

19.   <u>Defendants' Defense: Idaho Tort Claims Protocol (No Notice)</u>

Under Idaho Code section 6-906, all claims against a political subdivision or its employees "shall be presented to and filed with the clerk or secretary of the political subdivision

**REPORT AND RECOMMENDATION AND ORDER - 31**

within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later." *See* I.C. § 6-906.

Here, Defendants argue that, while Plaintiff did present a Notice of Claim (*see* Ex. E. to Vandervelde Aff. (Docket No. 28, Att.4)), the notice related only to a potential excessive force claim and nothing else. *See* Mem. in Supp. of Comprehensive Mot. for Summ. J., pp. 22-24 (Docket No. 28, Att. 3). Defendants do not provide authority for requiring a Plaintiff (within 180 days of an alleged injury) to know with specificity the nature of *all* potential claims in a legally cognizable format in order to satisfy Idaho Code section 6-906's notice requirement.

Given that one purpose of the notice requirement is to notify all authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability, it is difficult to see how a notice of a potential excessive force claim (the underlying thrust of this action) does not also incorporate the similar claims that necessarily peel off from such an allegation. *See Blass v. County of Twin Falls*, 132 Idaho 451, 452-53 (1999) (primary function of notice under ITCA is to "put the governmental entity on notice that a claim against it is being prosecuted and thus apprise it of the need to preserve evidence and perhaps prepare a defense."); *see also* I.C. § 6-907. Arguably, Plaintiff's notice sufficiently contains enough information to alert the governmental agency that a claim is about to be prosecuted against it.

It would seem necessary to point out, therefore, that, where Defendants' motion for summary judgment is granted, it is not the result of Plaintiff's failure to provide notice under Idaho Code section 6-906. *See, e.g., Cox v. City of Sandpoint*, 140 Idaho 127 (Idaho Ct. App. 2003) (sufficiency of notice creates question of fact to deny summary judgment).

**D.      Defendants' Motion to Strike Affidavit of Ron Martinelli (Docket No. 52)**

Defendants also move to strike Ron Martinelli's Affidavit (Docket No. 46) in support of Plaintiff's counter to Defendants' two motions for summary judgment. *See* Mot. to Strike

**REPORT AND RECOMMENDATION AND ORDER - 32**

(Docket No. 52).  Defendants claim that parts of Mr. Martinelli's Affidavit (paragraphs 15-93) are not based on personal knowledge, but instead cite to other sources in the record.  *See* Mem. in Supp. of Mot. to Strike Aff. of Ron Martinelli, pp. 2-4 (Docket No. 52, Att. 2)  This appears to be the case; however, the Court did not consider these portions of Mr. Martinelli's Affidavit when making its recommendations as to either motion for summary judgment.  Therefore, this objection is rendered moot and the accompanying Motion to Strike (Docket No. 52) in this respect is denied.

Defendants further argue that Mr. Martinelli is not qualified as an expert evidentiary witness and that his opinions about needing additional information are irrelevant.  *See id.* at p. 4 (Docket No. 52, Att. 2).  Again, the Court did not consider Mr. Martinelli's opinions regarding the alleged need for additional discovery to be integral to the resolution of the issues raised within Defendants' motions for summary judgment.  Therefore, this objection is also rendered moot and the accompanying Motion to Strike (Docket No. 52) in this respect is denied.

Defendants further argue that Mr. Martinelli makes inconsistent and conflicting statements within his Affidavit - on the one hand saying there is insufficient evidence to make a conclusive determination as to whether or not the arresting officers made an appropriate check of the handcuffs for tightness, but later saying the standards of detention and handcuffing were violated.  *See id*. at pp. 5-7.  These statements are not necessarily contradictory - one deals with *applying* the handcuffs, the other deals with *responding* to alleged complaints about the handcuffs being too tight.  Moreover, an expert's internally inconsistent statements are not necessarily grounds for exclusion, but rather fertile content for cross-examination at trial. Indeed, Defendants provide no support for excluding such statements outright.  Instead, to the extent there are inconsistencies, they should be considered as such.  Therefore, Defendants' Motion to Strike in this respect is denied.

**REPORT AND RECOMMENDATION AND ORDER - 33**

Finally, Defendants make procedural arguments. First, they argue that the last page of the Affidavit has a different footer than the rest of the Affidavit, suggesting that "it is not out of the realm of possibility that the first 16 pages of Mr. Martinelli's Affidavit were changed after Mr. Martinelli applied his signature." *See id.* at p. 7. This argument, premised solely upon a different footer at the bottom of a single page, is not persuasive.[11] Second, Defendants argue that the signature page is not notarized - even though the next page is *See id.* Nonetheless, that next page confusingly states that the Affidavit consisted of only one page.

While Defendants' Motion to Strike (Docket No. 52) highlights several curious shortcomings within Plaintiff's briefing, it is not substantively persuasive enough to be granted. Because the majority of Defendants' summary judgment efforts is meritorious, and the portions that are not granted were not based on the Affidavit now at issue, Defendants' Motion to Strike (Docket No. 52) is denied. Simply put, the information objected to was not material to the Court's consideration of the issues presented in the motions for summary judgment.

## III.  RECOMMENDATION

Based upon the FOREGOING, it is hereby RECOMMENDED that the District Court enter an Order consistent with the following:

1.      That Defendants' First Motion for Summary Judgment (Docket No. 23) be GRANTED;

2.      That Defendants' Second Motion for Summary Judgment (Docket No. 28) be GRANTED in part and DENIED in part as follows:

      a.      To the extent Plaintiff is making a Ninth Amendment claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

---

[11] However, it is interesting to note that the overwhelming majority of the Affidavit is a mirror image of Plaintiff's Statement of Facts.

**REPORT AND RECOMMENDATION AND ORDER - 34**

b.      To the extent Plaintiff is making a Fifth Amendment claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

c.      To the extent Plaintiff is making a claim premised upon Plaintiff's criminal prosecution, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

d.      To the extent Plaintiff is making Fourth Amendment and § 1983 claims based upon Plaintiff's alleged unlawful detention and arrest, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

e.      To the extent Plaintiff is making Fourth Amendment and § 1983 claims based upon Defendants' use of handcuffs in detaining and arresting Plaintiff, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

f.      To the extent Plaintiff is making Fourth Amendment and § 1983 claims based upon Defendants' alleged excessive force, Defendants' Second Motion for Summary Judgment (Docket No. 28) is DENIED;

g.      To the extent Plaintiff is making a claim based upon the absence of a warrant, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

h.      To the extent Plaintiff is making a Fourteenth Amendment claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

I.      To the extent Plaintiff is making municipal liability and § 1983 claims, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

j.      To the extent Plaintiff is making failure to discipline and § 1983 claims, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

k.      To the extent Plaintiff is making supervisor liability and § 1983 claims, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

**REPORT AND RECOMMENDATION AND ORDER - 35**

l.      To the extent Plaintiff is making a conspiracy claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

m.      To the extent Plaintiff is making a false arrest claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED.

n.      To the extent Plaintiff is making a false imprisonment claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

o.      To the extent Plaintiff is making an abuse of process claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

p.      To the extent Plaintiff is making an intentional infliction of emotional distress claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED; and

q.      To the extent Plaintiff is making an invasion of privacy claim, Defendants' Second Motion for Summary Judgment (Docket No. 28) is GRANTED;

r.      To the extent such claims are actually made, Plaintiff's claims of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process should be dismissed in accordance with Idaho Code section 6-904.

## IV.  ORDER

Based upon the FOREGOING, it is hereby ORDERED that Defendant's Motion to Strike Affidavit of Ron Martinelli (Docket No. 52) be DENIED.

DATED:  **September 9, 2008**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION AND ORDER - 36**